# CHARLESTON.

REMAGĖ v. MARPLE *et al.*

Submitted March 9, 1915.    Decided June 1, 1915.

PRINCIPAL AND SURETY—*Liability of Sureties—Contribution.*

> To become liable as sureties for the same debt or for the performance of the same duties, it is not essential that the obligors be bound by the same instrument.  If sureties, each of them will be liable for the undertaking, or required to contribute thereto proportionately, though bound by different instruments.  And this relation and liability may arise by implication from circumstances, as well as by express agreement.

Error to Circuit Court, Braxton County.

Action by J. C. Remage against J. A. Martin and others. Judgment for plaintiff, and defendant C. W. Marple brings error.

*Affirmed.*

*Corley & Green* and *John B. Morrison,* for plaintiff in error.

*Hines & Kelly,* for defendant in error.

LYNCH, JUDGE:

In September, 1907, J. A. Martin as principal, and C. W. Marple as surety, executed to S. E. Perkins their note for $575, payable in one year.  After its maturity, Marple gave notice under the statute to Perkins to sue on the note, and the payee demanded additional security.  Martin then procured from J. C. Remage as maker, and transferred to Perkins, a negotiable note of December 12, 1908, for $500, payable to himself in sixty days.  The first note remaining unpaid, Perkins, without instituting any action thereon, promptly sued on the second note and obtained a judgment thereon against Martin and Remage, which was satisfied out of the proceeds of a sale of Remage's real estate.  Thereafter, Remage brought assumpsit for reimbursement, and obtained a judgment against Marple alone for $322.  Martin, though named as defendant, was not served with process, and did not appear in the action.  As plaintiff in error, Marple denies

any liability to Remage, and assigns as erroneous certain rulings on instructions.

The testimony may reasonably be deemed sufficient to prove that, when the second note was executed, Martin promised but failed to secure it by deed of trust to be delivered simultaneously therewith, but took and retained the note over the objection of Remage, and about three weeks before its maturity transferred it to Perkins in order to avoid suit against him on the first note; and that this second note was accepted by Perkins, without knowledge of the circumstances attending its execution, not in payment but as additional security for the first note without any express agreement as to suspension of his right of action thereon. Plaintiff testified that when he learned of the transfer he protested to Martin and demanded return of the note, and also explained fully to Marple all the circumstances attending its execution and transfer; that Marple requested him to leave the note with Perkins as security, and assured him the first note would be paid by Martin, telling him "just to leave it there and Martin would come out and pay" the original debt, "and not to raise any disturbance about my note—it was to keep Perkins off of him and Martin at that time"; that, because of such request and assurance by Marple, he did leave the note with Perkins as such security. The procurement and transfer by Martin of the Remage note is admitted by Marple, though there is no proof that he knew anything about either transaction at the time it took place. But he denies he ever had any understanding with plaintiff that the note was to be left with Perkins for any purpose.

Were Remage and Marple co-sureties for Martin's liability to Perkins? Apparently, the jury, in fixing the amount of plaintiff's recovery, followed the rule of contribution, on the theory that, under the facts, such relation existed. Upon the trial, plaintiff, in one aspect of the case, contended he was merely surety for Marple, by virtue of his alleged understanding with the latter. He requested and the court gave an instruction embodying this theory of liability; which, if correct and sustained by proof, would have entitled him, not to contribution merely, but to recovery of the entire sum paid Perkins, leaving Marple, who would thus occupy toward him

the position of principal, without right of contribution in case
he had himself discharged the Martin debt. But, in argument
here, plaintiff seems to have abandoned this position, and
now makes no complaint as to. the amount of his recovery.
That theory is, in fact, untenable under the proof. For, from
his own testimony, it is clearly apparent Remage, at the time
of the execution of the note by him and of his alleged under-
standing with Marple, relied on Martin to pay the original
obligation due to Perkins, with whom he left the second note,
as he claims, on the assurance by Marple that Martin would
pay the first note. Hence, the instruction mentioned, while
not specifically objected to, was improper. However, as the
jury clearly were not misled by it, but were guided by in-
structions fully and correctly presenting the theory of co-
suretyship, the error is now a harmless one.

Under the facts detailed and not controverted, the jury
reached a proper conclusion. Judged by such facts, Remage
and Marple were co-sureties. Though by different instru-
ments, they had become bound for payment of the same debt.
Marple's knowledge of the execution of the note by Remage
as collateral security was immaterial. 2 Daniell Neg. Inst.
§1340; *Rosenbaum* v. *Goodman,* 78 Va. 121. Hence, Remage
was entitled, not to subrogation, but to contribution. "It
is well settled that, if different persons are sureties for the
same debt, or for the performance of the same duties, each
will be made to contribute, though they are bound by differ-
ent bonds, and though they knew nothing at the time of the
obligation of each other. What difference does it make if
they are severally bound and by different instruments. but
for the same principal and the same engagement? In all
these cases, the sureties have a common interest and a common
burthen. They were joined by the common end and purpose
of their several obligations, as much as if they were joined in
one and the same instrument". *Corprew* v. *Boyle,* 24 Gratt.
290. "If there are two parties bound as principal and
surety for a debt, and a third party afterwards, at the
request of the principal, binds himself as surety for the debt,
the two sureties, in the absence of any agreement to the con-
trary, become co-securities of the same principal, and this
relation may be established by implication from circum-

76 W. Va.

stances, as well as by express agreement". *Harnsberger* v. *Yancey*, 33 Gratt. 527; see also *Stovall* v. *Bank*, 78 Va. 188.

It is contended by defendant that, by giving the notice provided for by §§1 and 2, ch. 101, Code, he was released from all liability as surety. Written notice was given to Perkins, as therein provided, about ten days before the transfer of the Remage note, to proceed to enforce the principal debt against Martin. But no action was taken by the creditor upon that obligation. Instead, Perkins chose to enforce the note given as collateral security. But the defense so interposed fails for want of proof. The statute does not require the creditor to proceed against an insolvent debtor. The provision is that he shall forfeit his right against the surety if he shall not within a reasonable time after notice "institute suit against every party to such contract who is a resident in this state and not insolvent". Solvency of the principal obligor is essential to such release. *Barnes* v. *Boyers*, 34 W. Va. 303. Here there is no proof whatever of the solvency of Martin. Indeed, circumstances appearing in the record strongly indicate his insolvency.

Again, as to the further claim that the taking of the Remage note by Perkins was a release of Marple, even conceding that the giving of that note had the effect of extending time by the creditor on the principal debt by suspending right of action thereon until maturity of the security, yet Marple's request and inducement to Remage to leave the note with Perkins, if true, as the jury apparently found, was a waiver of his right to a discharge. "The right of the surety to be discharged by reason of extension of time for payment is a personal privilege, and one which he may waive by a verbal ratification or assent made after the agreement for such extension has been entered into". *Glenn* v. *Morgan*, 23 W. Va. 467. And, by some authorities, the taking of a new note merely as collateral security does not release the surety on the first note. 1 Brandt on Suretyship, §§ 403, 404; 32 Cyc. 211. Whether, as Perkins testifies, the new note was taken by him as such collateral security merely, is a question of intention of the parties. *Stuart* v. *Lancaster*, 84 Va. 772; *Davis* v. *Davis*, 104 Va. 65.

What has been said practically disposes of the rulings on

instructions. Number 3, given for plaintiff, does not, as defendant contends, assume the fact of co-suretyship. On the contrary, it simply requires a finding for plaintiff if the jury shall find from the evidence this relation existed between him and Marple. Number 2 for defendant, refused, in so far as it propounded correct legal principles, was sufficiently covered by other instructions given for him. Number 5 was properly refused. It wholly ignores the theory and evidence of co-suretyship, and, before plaintiff could recover any sum in this action, it would require a showing of a written contract by Marple to pay him the entire amount of the Martin note. This was clearly erroneous.

Finding no error, we affirm the judgment.

*Affirmed.*