## BISHOP *v.* CURRIE-McGRAW CO.

### (Division B. Nov. 26, 1923.)

[97. So. 886.   No. 23606.]

1. PRINCIPAL AND SURETY. *Distinction between contract of "surety" and of "guaranty" stated.*

   A contract of a surety is a direct original agreement with the obligee that the very thing contracted shall be done, while "guaranty" is a cumulative collateral engagement by which the guarantor agrees that his principal is able to and will perform the contract he has made or is about to make, and that, if the principal fails, the guarantor will, on being notified thereof, pay the same. A "surety" is an insurer of the debt or obligation, while a guarantor is an insurer of the ability or solvency of the principal.

2. PRINCIPAL AND SURETY. *Contract held one of a "surety," within statute discharging surety on creditor's failure to commence suit pursuant to notice.*

   Where the contract of a surety provided, "The undersigned agrees that the debts . . . may, by note or otherwise, be changed in form, extended, or renewed at the option of said vendor without notice to the undersigned, and liability of the undersigned shall not be affected by such change, extension or renewal," and where the debt was not renewed or extended by the creditor, but became past due and unpaid, the surety had a right to give notice to the creditor under section 3731, Code of 1906 (Hemingway's Code, section 2907), to sue the principal, and if said suit was not commenced within the time required by said section after the giving of such notice the surety is discharged.

3. PRINCIPAL AND SURETY. *Surety's notice to creditor to sue principal held sufficient.*

   The following letter, written by a surety to the creditor to sue the principal, is sufficient to comply with section 3731, Code of 1906 (Hemingway's Code, section 2907): "Take notice that you are expected to proceed to the collection of securing your account against Will D. Turner, of Shaw, Miss., payment guaranteed by the writer, as this party is at this time solvent, and the money can be made by process of law against him, if prompt action is taken; but, if delay is made, he may become insolvent

by sale of his goods, and I as indorser thereby damaged. Therefore you are notified to proceed on the collection of the account forthwith."

APPEAL from circuit court of Bolivar county, Second District.

HON. W. A. ALCORN, JR., Judge.

Suit by the Currie-McGraw Company against J. W. Bishop. Judgment for plaintiff, and defendant appeals. Reversed and judgment rendered.

*Shands, Elmore & Causey,* and *Miss Lucy Somerville,* for appellant.

The contract sued on was a contract of suretyship within the contemplation of section 3731, Code of 1906, section 2907, Hemingway's, and the defendant, Bishop, was discharged by the failure of the plaintiff company to sue the principal debtor, Turner, after written notice so to do had been given it.

An examination of this contract shows that it was signed by both Turner and Bishop, that the real consideration is the buying of goods, wares and merchandise by Turner from the Currie-McGraw Company on credit, that Bishop undertook to guarantee the payment of the account and further "to bind himself personally, his heirs, executors and administrators to said vendor (The Currie Mc-Graw Company) for the payment of all debts of every kind, name and nature, including interest at the rate and on the terms of said debts which said purchaser is now owing or may hereafter owe to said vendor, whether now due or not due, provided however, that the liability of the undersigned hereunder shall not be for a greater amount than thirty-five hundred dollars and interest."

"A surety" to use the language of Brandt, Suretyship Guaranty, Vol. I, page 3, note, "As the term is commonly used, may be defined also as one who becomes answerable for the debt, obligation or conduct of another.

This includes the surety in the restricted technical sense, the guarantor, the accommodation maker, the endorser and persons whom the law treats as sureties." And on page 9, Brandt says: "The words, surety and guarantor are often used indiscriminately as synonymous terms; but while a surety and guarantor have this in common, that they are both bound for another person, yet there are points of difference between them which should be carefully noted."

The Mississippi court had this proposition before it in the case of *Cox* v. *Weed,* 57 Miss. 348. In delivering the opinion Chief Justice George said (page 355): "It is here insisted that the instrument sued on was a guaranty, and that notice of its acceptance by the plaintiff, and of the credit given under it, should have been given to the sureties, Cox and Deason. We do not consider the instrument sued on a guaranty in the sense which it has been held that a guarantor is entitled to notice of its acceptance and of the credit given under it."

In the light of that decision the contract in the case at bar is a contract of suretyship. Turner and Bishop are both parties to it, their liability is joint and several, it is absolute and unconditional, the consideration flowing to Bishop is the credit allowed Turner, and Bishop is, as charged in plaintiff's counter notice (Rec. page 217) a "principal debtor" in the sense of the phrase used by Brandt, that the surety "is an original promisor and debtor from the beginning." This case of *Cox* v. *Weed Sewing Machine Company, supra,* is a recognized authority. It is cited in later editions of Brandt, in *Hall* v. *Weaver,* 34 Fed. 104, and other decisions.

The undertaking of Bishop was that the debt "shall be paid," it was the undertaking of a surety. He did not guarantee the solvency of Turner, he bound "himself personally . . . for the payment of all debts of every kind."

The following authorities are to the same effect: *Galloway Coal Company* v. *Hunter,* 79 Miss. 559; *Hess et al.* v. *J. R. Watkins Medical Co.,* 123 N. E. 440; *News-Times Publishing Company* v. *Doolittle,* 118 Pac. 974; *Rouss* v. *King,* 48 S. E. 220; *Arnett* v. *Simpson,* 235 S. W. 982; *J. R. Watkins Medical Company* v. *Lovelady,* 65 So. 52.

According to all the tests, the contract before the Court is one of suretyship. In a recent case, that of *McConnon & Co.* v. *Richardson et al.,* 78 So. 292, 117 Miss. 345, this court had before it a contract similar to the one at bar. The declaration was demurred to, the demurrer alleging that the defendants were guarantors and the lower court sustained the demurrer. The supreme court reversed the case, and speaking through Justice SYKES said: "The court erred in sustaining the demurrer and dismissing the cause, while the agreement terms the two demurrants as guarantors, at the same time there is but one written agreement or contract, and that is signed by the principal debtor, and the guarantors or sureties."

The contract before the court is an agreement that Bishop would do the thing which Turner, his principal, had undertaken, it is therefore a contract of suretyship within the meaning of section 3731, Code of 1906 (section 2907, Hemingway's Code.)

*Roberts & Hallam,* for appellee.

Counsel for appellant rely on the ground for a reversal of the judgment appealed from, that the appellant was discharged from liability to the appellee by virtue of the notices dated November 16, 1918 (R. page 258, Vol. 2) and December 6, 1918 (R. p. 259, Vol. 2) under the provisions of section 3731, Code of 1906 (section 2907, Hemingway's Code).

It is our contention that it is immaterial whether Mr. Bishop was a surety or a guarantor, because first, under the peculiar provisions of the contract in question, no

sort of notice could have relieved him from liability; and because, second, the notices given by him, and on which he relies were not explicit, but were in the alternative, and permitted the appellee to secure the amount due, in any way they could.

Looking to the instrument sued on, we find that it contains, among others, the following provisions: "That the undersigned (meaning Bishop, the guarantor) guarantees the payment of and binds himself personally, his heirs, executors, and administrators to said vendor (meaning the Currie-McCraw Company) for the payment of all debts of every kind, name and nature, including interest at the rate and on the terms of said debts, which the said purchaser (meaning W. D. Turner) is now owing, or may hereafter owe the said vendor, . . . the undersigned (Bishop) agrees that the debts, payment of which is hereby guaranteed may, by note or otherwise, be changed in form extended or renewed at the option of said vendor (Currie-McCraw Company) without notice to the undersigned (Bishop) and the liability of the undersigned shall not be affected by such change, extension or renewal . . . and the personal joint and several liability of the undersigned (Bishop) shall be, and is absolute and unconditional."

In other words, immediately upon the failure of Turner to pay his indebtedness to the Currie-McCraw Company, Bishop under this instrument became bound, absolutely and unconditionally.

The appellant contends that the contract is one of suretyship, merely because it was signed by W. D. Turner also. We submit that this circumstance alone is not conclusive. By referring to the original contract, the court will observe that before execution it was a mere mimeographic form, leaving two lines at the bottom to be signed by one or more persons as guarantors. The word, "undersigned," used throughout the contract was intended to

refer to the guarantors alone, and the contract was therefore to be signed only by such guarantors.

While this court held in the case of *Galloway Coal Company* v. *Hunter,* 79 Miss. 559, cited by appellant, that the contract in that case was one of suretyship, it also held that, being a doubtful and ambiguous contract, the court would look to the situation of the parties and the surrounding circumstances to determine whether it was one of suretyship or guaranty.

Turner bound himself in no way by this contract. He promised and undertook nothing; and he signed it merely because it recited that he "W. D. Turner . . . offers J. W. Bishop of Shaw, Mississippi, to guarantee the payment of" said debts. To construe the contract otherwise would result in doing violence to this specific declaration.

It can make no difference whether Mr. Bishop is denominated a guarantor or surety. In either event, to hold that he might discharge his liability by giving notice to the creditor to bring suit at any particular time would amount to an authorization to him to repudiate that provision of the instrument, which he signed, which in effect provides that he cannot require suit to be brought against the principal, but that on the contrary the creditor can extend the time of payment at its pleasure.

In the second place we submit that the letters on which the appellant relies (Rec. pp. 213-259, Vol. 2) are not so explicit as that the appellee upon their receipt must have necessarily concluded that Bishop, the appellant was given thereby notice "To commence and prosecute legal proceedings against" Turner, in the language of the statute.

The only particularization set out by this affidavit was that Bishop did not owe the account. He did not undertake to specify that any of the items of the account were incorrect, except that it denied the liability of Bishop therefor. This did not put the appellee to the proof of the correctness of the items of the account, but only to

the proof of the liability of Bishop for the same. This is the holding of this court in *Tichenor* v. *Woodburn*, 54 Miss. 589.

Argued orally by *Miss Lucy Robinson Somerville*, for appellant, and by *L. C. Hallam*, for appellee.

ETHRIDGE, J., delivered the opinion of the court.

The appellee sued the appellant on a claim for one thousand five hundred forty-five dollars and nine cents, claimed to be due by virtue of a contract entered into between the appellant and one W. D. Turner, whereby the payment of money to the Currie-McGraw Company for goods sold to Turner was provided for. This contract, made an exhibit to the declaration, reads as follows:

"The undersigned, for and in consideration of one dollar ($1) in hand paid by W. D. Turner, now of Shaw, Miss., hereinafter called the purchaser, at his present place of business, or elsewhere, to buy goods, wares, and merchandise on credit of Currie-McGraw Company, Memphis, Tenn., hereinafter called the vendor, hereby offer J. W. Bishop, of Shaw, Miss., to guarantee the payment of and bind himself personally, his heirs, executors, and administrators, to said vendor for the payment of all debts of every kind, name, and nature, including interest at the rate and on the terms of said debts, which said purchaser is now owing or may hereafter owe to said vendor, whether now due or not due: Provided, however, that the liability of the undersigned hereunder shall not be for a greater amount than thirty-five hundred ($3,500) dollars and interest at the rate of and on the terms of said debts.

"The undersigned agrees that the debts, the payment of which is hereby guaranteed, may, by note or otherwise, be changed in form, extended or renewed at the option of said vendor without notice to the undersigned and liability of the undersigned shall not be affected by such change, extension or renewal; that this guaranty shall be in full force and effect up to such date as the said vendor shall

have received at its office in Memphis, Tenn., written no-
tice from the undersigned to cease selling to the said pur-
chaser on the strength of this guaranty; that the said ven-
dor may at its option extend credit to the said purchaser
to any amount in excess of the limit of this guaranty with-
out impairing our personal, joint, or several liability
hereunder; and the personal, joint, or several liability of
the undersigned shall be and is absolute and unconditional,
and shall not be affected by the failure of any other person
or persons to sign this guaranty; that the delivery hereof
to the said purchaser shall constitute an unconditional
delivery to the vendor; that, should said vendor commence
suit against the said purchaser or against the undersigned
on this guaranty to pay a reasonable attorney's fee, the
amount of the same is to be taxed against the undersigned
as part of the cost in said action.

"The undersigned hereby waives notice from the said
vendor or of the amount of the said purchaser's indebted-
ness, default in payment, or of the acceptance of this
guaranty.

"In witness whereof, we have hereunto subscribed our
names at Shaw, Miss., on the 12th day of October, 1917.

"[Signed] J. W. BISHOP.

"W. D. TURNER.

"Witness: J. C. WALKER."

The declaration also had an account attached as an
exhibit showing the amount of the goods sold, etc., which
account was sworn to by the plaintiff and denied by the
defendant. The affidavit of denial stated the account was
incorrect, and that he did not owe the same or any part
thereof.

The appellee sold to Turner at various times good, wares,
and merchandise under said contract. The last shipment
of goods to Mr. Turner was made on May 29, 1918. The
company then called on Mr. Bishop to pay the amount.
He made a small payment thereon, and after considerable
correspondence wrote the Currie-McGraw Company to

send a representative to Shaw to settle the matter with Turner. This letter reads as follows:

"November 16, 1918,

"Currie-McGraw Company, Memphis, Tenn.—Gentlemen: Yours of the 11th inst. received. My delay in writing you was to give W. D. Turner opportunity to reduce in some measure the amount. He promised me he would send you a good-sized remittance, and I wanted as large reduction as possible. He seems again to have failed. Now, gentlemen, I ask that you send your representative down here and close some settlement with him, doing the best you can, and getting as much out of him as you can. When you have done that, you will have no need of an attorney to collect the remainder from me. You appreciate the fact that I do not want to have to pay out any more than I must on this account that will have no return to me. He has treated me as shabbily as he did you.

"Yours truly, [Signed] J. W. BISHOP."

Mr. Burkhardt, of the Burkhardt Adjustment Company, went to Shaw at the instance of the Currie-McGraw Company and investigated Turner's affairs, and reported that Turner was solvent. Mr. Bishop then wrote as follows to the Currie-McGraw Company:

"Take notice that you are expected to proceed to the collection of securing your account against Will D. Turner, of Shaw, Miss., payment guaranteed by the writer, as this party is at this time solvent, and the money can be made by process of law against him, if prompt action is taken, but, if delay is made, he may become insolvent by sale of his goods, and I as indorser thereby damaged. Therefore you are notified to proceed on the collection of the account forthwith.

"Yours truly, [Signed] J. W. BISHOP."

The Currie-McGraw Company did not file suit against Turner after receiving this notice, and Turner continued to do business and thereafter make payments to the appellee, plaintiff, as follows: On January 7, 1919, three

hundred and fifty dollars; January 7, 1919, one hundred
and fifty dollars; February 3, 1919, one hundred dollars;
April 23, 1919, one hundred dollars. In November, 1919,
Turner filed a petition in bankruptcy. No suit was filed
against Turner by the Currie-McGraw Company to col-
lect the account. The suit filed against Bishop was re-
turnable at the November, 1919, term of circuit court, al-
most two years after the giving of the notice by Bishop
above set forth.

There are two contentions presented here, or at least
the contentions may be reduced to two, or at most three:
(1) Whether the contract above set forth was a contract
of suretyship, within the purview of section 3731, Code of
1906 (Hemingway's Code, section 2907), and whether the
defendant, Bishop, was discharged by the failure of the
Currie-McGraw Company to sue the principal, Turner,
after the letter above set forth, dated December 6, 1918,
directing the company to proceed against Turner above
set forth. (2) Whether there was any proof of the ac-
count, so far as Peter Stewart's account, assumed by Tur-
ner and guaranteed by Bishop, was concerned.

Section 3731, Code of 1906 (Hemingway's Code, sec-
tion 2907), reads as follows:

"Any person bound as surety or accommodation indors-
er for another, may, at any time after the debt has become
due or liability been incurred, give notice in writing to
the creditor to commence and prosecute legal proceedings
against the principal debtor, if living and resident within
this state, for the recovery of the debt; and if the creditor
fail to commence legal proceedings by the next term of
the court in which the same shall be instituted, to be held
after the expiration of thirty days from the giving of the
notice, and to prosecute the same to effect, the surety who
shall have given the notice shall be discharged from lia-
bility. It shall not be lawful to plead or to give in evi-
dence under this section a notice not in writing, and any

act of the creditor shall not be a waiver of notice in writing as herein required."

The appellant contends that the contract signed by Bishop and Turner is a contract coming within the purview of the above section; whereas, the appellee contends that the instrument is a guaranty, and that by reason of some of its provisions the appellant-is precluded from making a demand under the statute, even though it might be held generally to be a contract of suretyship rather than of guaranty. It is insisted that the provision in the contract:

"The undersigned agrees that the debts, the payment of which is hereby guaranteed, may, by note or otherwise, be changed in form, extended, or renewed, at the option of said vendor, without notice to the undersigned, and liability of the undersigned shall not be affected by such change, extension, or renewal; that this guaranty shall be in full force and effect up to such date as the said vendor shall have received at its office in Memphis, Tenn., written notice from the undersigned to cease selling to the said purchaser on the strength of this guaranty," etc.,—precludes notice under the statute. There is no question of the fact that Bishop is absolutely bound under this contract to pay the debt, or such as might thereafter be made up to the termination of the contract, by the giving of the notice, subject to the limitation of three thousand five hundred dollars until the notice to proceed to suit was given, if notice was in fact given.

In our view, the contract is one of suretyship, in that the said Bishop undertakes and binds himself to pay the debt absolutely and unconditionally, instead of guaranteeing the solvency or ability of Turner to pay. The provisions upon which the appellee relies to prevent a statute from coming into operation does not, in our opinion, have such effect. The provision is that a creditor may renew, extend, or change the form of the debt without notice to the surety or guarantor. If he had in fact continued to ex-

tend and renew the debt, and thereby prevent it from becoming due and payable, the statute would not come into play, because it can only come into play when the debt is past due and unpaid. It being a past-due and unpaid debt at the time of the writing of the letter, this provision of the contract, giving the right of extension or renewal, is not effective to prevent the statute from coming into play. The creditor could have prevented the debt from becoming past due by renewal or extension at the time, but he did not do that. The debt was due, and the debt was unpaid, and therefore, at the time the letter was written, Bishop had the privilege under the statute of directing the creditor to proceed to suit. Did the letter above set out comply with the statute in making a demand for suit? It is insisted by the appellee that it is not sufficient; that it did not in terms direct the suit to be brought, but merely directed the company to proceed to a collection of the debt.

In our opinion this letter is a direction to proceed by process of law, and complies with the statute. It is difficult to see how any other construction can be placed upon it, taking all of its provisions together. It is true that the letter says, "You are expected to proceed to the collection of your account; but it continues, "This party is at this time solvent, and the money can be made by process of law against him, if prompt action is taken," which clearly shows that the writer intended for the creditor to proceed to judgment and execution. It further proceeds:

"But, if delay is made, he may become insolvent by sale of his goods, and I as indorser thereby damaged. Therefore you are notified to proceed on the collection of the account forthwith."

We think this letter is sufficient compliance with the statute to direct the creditor to proceed to judgment. This court, in the case of *McConnon & Co.* v. *Richardson,* 117 Miss. 345, 78 So. 292, held that the contract there involved,

which is a great deal like this one in substance, was a contract of suretyship.

The general test of whether a person is a surety or a guarantor is determined by the test as to whether the person undertaking to pay binds himself to do so at all events, or absolutely, or whether he merely undertakes to bind himself for the payment, provided it cannot be made out of the principal. In 28 Corpus Juris, p. 890, it is said:

"In a broad sense, a contract of guaranty corresponds with that of suretyship, the distinction between them being merely technical, and a transaction which is called in some cases an absolute guaranty is denominated by other courts a contract of suretyship. A guaranty is like a suretyship, in the sense that it is an engagement to answer for the debt, default, or miscarriage of another, and for this reason the terms 'surety' and 'guarantor' or 'guaranty,' are often confounded and used interchangeably. The two subjects, however, have some important distinguishing features, which are not easy to define by any brief and comprehensive formula.

"While each is, as to the principal, collaterally liable, as to the creditor or obligee the surety is primarily and directly liable on his contract from the beginning; whereas, the liability of the guarantor is secondary, and is fixed only by the happening of the prescribed condition at a time after the contract itself is made. A surety is bound with the principal on the identical contract under which the liability of the principal accrues; a guarantor becomes bound for the performance of a prior or collateral contract upon which the principal alone is obligated. The contract of the surety is made at the same time, and usually jointly, with that of his principal; while that of the guarantor is a contract separate and distinct from that of his principal. It may be made at the same time and upon the same consideration, but it usually is made later and upon a separate consideration. The contract of the surety is a direct original agreement with the obligee that the very

133 Miss.—34

thing contracted for shall be done; whereas, a guarantor enters into a cumulative collateral engagement, by which he agrees that his principal is able to and will perform a contract which he has made or is about to make, and that if he defaults the guarantor will, upon being notified thereof, paying the resulting damages. A surety is an insurer of the debt or obligation, while a guarantor is an insurer of the ability or solvency of the principal. A strict guarantor is entitled to notice of his principal's default, while a surety is held to know every default of his principal and is liable without such notice."

The contract we have before us is skillfully drawn for the purpose of securing every advantage to the creditor, but when it is critically analyzed it is an unconditional contract, so far as the obligation to pay the debt is concerned. There is nothing in the case of *McConnon* v. *Prine,* 128 Miss. 192, 90 So. 730, inconsistent with these views.

In our opinion the appellant had the right under the statute to give the notice to institute proceedings, and the letter set out is sufficient for that purpose, and the failure of the creditor to proceed discharges the appellant from the obligation. The provision in the contract as to giving notice to quit selling is not applicable in the suit before us, because the sales had been discontinued and demand was being made upon the appellant for the payment, or at least had been so made, and it was brought to the appellee's notice that Turner was solvent, and that delay is pressing the matter to a judgment might result injuriously to the appellant. In fact, the delay and failure did result injuriously to him. In this view of the case it is unnecessary to consider the other questions.

Appellant, at the conclusion of the evidence, moved the court to direct a verdict for the defendant, upon the ground, among others, that after the giving of the notice to proceed by law to the collection of the debt there had been several terms of the circuit court held having jurisdiction of the matter, and that no suit had been filed against W.

D. Turner by virtue of section 3731, Code of 1906 (Hemingway's Code, section 2907), and that appellant had become discharged. This motion should have been sustained, and the judgment will be reversed, and judgment entered here for the appellant.

*Reversed and rendered.*