W. M. WILLIAMS, *General Receiver, etc. v.* J. S. ZIMMERMAN *et al.*

(No. 9296)

Submitted May 12, 1942. Decided June 9, 1942.

Fox, President, dissenting.

*J. O. Henson, Stephen Ailes* and *G. K. Kump,* for plaintiff in error.

*George H. Williams* and *Ernest A. See,* for defendants in error.

Rose, Judge:

Upon petition of John J. Cornwell, a writ of error was awarded to a judgment of the Circuit Court of Hampshire County, by which a verdict in his favor, upon a motion for judgment by W. M. Williams, as general receiver of that court, was set aside and a new trial awarded.

Under date of November 22, 1930, one J. S. Zimmerman and the plaintiff in error executed their joint and several note, payable one day after date, to Ira V. Cowgill, general receiver of the Circuit Court of Hampshire County for $1200.00. After the signature of the plaintiff in error, which was second on the paper, was written the word "(surety)." The payee subsequently died, and this note was, by the executrix of his will, assigned to W. M. Williams, his successor in office, under date of January 21, 1938. The note not having been paid, Williams, as such receiver, gave notice to both makers, that on the 17th day of September, 1940, in the Circuit Court of Hampshire County, he would move for judgment against them on said note in the amount of $2,048.64, including interest. A demurrer by the plaintiff in error was overruled, after which he pleaded the general issue and filed a special plea. Zimmerman made no defense or appearance, and judgment was rendered against him accordingly. On the issues

thus raised, a jury trial was had, resulting in a verdict in favor of the plaintiff in error, which was subsequently set aside, followed by this writ of error.

The special plea filed by the plaintiff in error alleged, in substance: (1) That on the 7th day of December, 1935, he, being the surety on the note in suit, had given notice in writing to the then general receiver of the court "to collect" the note now sued on, at which time and for a reasonable time thereafter, Zimmerman, the principal thereon, was solvent and a resident of the State of West Virginia, and that failure of Cowgill "to collect from J. S. Zimmerman", operated to discharge him from liability on the note; and (2) that the plaintiff "in his capacity as Cashier of The First National Bank of Romney, lent to the said defendant, J. S. Zimmerman," $2,635.00 on his collateral note, which was subsequently paid, from the proceeds of which was paid approximately $500.00 on certain obligations to that bank, the amounts due on two other notes held by the plaintiff as such receiver for $350.00 and $400.00, respectively, leaving the sum of $1,422.06, which was turned over to Zimmerman in cash; and that the receiver thus failed "to collect from the principal debtor the said note (here sued on) when he had the opportunity", whereby the plaintiff in error is claimed to have been discharged from liability.

The trial judge, as shown by the order entered, set aside the verdict in favor of the plaintiff in error upon three grounds: (1) That the notice given by the plaintiff in error to the general receiver Cowgill was not sufficient under the statute; (2) that there was not adequate proof on behalf of the plaintiff in error that the principal on said note, J. S. Zimmerman, was solvent at the time of the giving of said notice and for a reasonable time thereafter; and (3) that a certain instruction given on behalf of the plaintiff in error, based on the sufficiency of said notice, was improper. The assignments of error, though eight in number, merely allege, in different forms, that the trial court was in error on each of these three propositions. The defense based upon the circumstances con-

nected with the First National Bank loan to Zimmerman is not mentioned in brief or argument, and is, we assume, abandoned.

We cannot disturb the finding of the trial court that the solvency of Zimmerman, the principal debtor, was not sufficiently proved. The only witnesses on this question were Zimmerman himself and the plaintiff in error. The former merely testified that, appraising his assets at their cost and what he thought they were worth, he would have been solvent at the time of the serving of the notice in question; but he conceded on cross-examination that he had been sold out by his creditors in 1940, at which time he had no new debts and no additional property, and that the sale did not liquidate his indebtedness in full. The plaintiff in error, in reply to the question as to Zimmerman's solvency, said: "My answer to that will be yes, but I think in fairness to myself I should explain why I say that." He then added: "I was President of the Bank of Romney, we were lending money to Mr. Zimmerman, he was transacting business at that time, and at that time he was meeting his obligations and doing business in the usual way, and so far as I knew or then believed he was solvent." No list of Zimmerman's property in 1935 or its value or of his indebtedness at that time was put in evidence. The court, therefore, could very well find that the solvency of the principal debtor was not shown, and his setting aside of the verdict on that ground alone would have put his action beyond our interference. *McClaugherty* v. *Tri-City Traction Co.*, 123 W. Va. 112; 14 S. E. 2d 432; *Ercole v. Daniel*, 105 W. Va. 118, 141 S. E. 631; *Wheeling Mold & Foundry Co.* v. *Wheeling Steel & Iron Co.*, 62 W. Va. 288, 57 S. E. 826.

The statute invoked by the plaintiff in error is found in sections 1 and 2, article 1, chapter 45 of the Code, and reads thus:

1. "The surety, guarantor or indorser (or his committee or personal representative) of any person bound by any contract may, if a right of action has accrued thereon, require the creditor (or his committee or personal representative) by notice

in writing, forthwith to institute suit thereon; and if he be bound in a bond with collateral condition or for the performance of some collateral undertaking, he shall also specify in such notice the breach of the condition or undertaking for which he requires suit to be brought."

2. "If such creditor or his committee or representative shall not, within a reasonable time after such notice, institute suit against every party to such contract who is a resident in this state, and not insolvent, and prosecute the same with due diligence to judgment and by execution, he shall forfeit his right to demand of such surety, guarantor or indorser or his estate, and all his cosureties and their estates, the money due by any such contract for the payment of money, or the damages sustained by any breach of the collateral condition or undertaking specified as aforesaid. But the conditions, rights, and remedies against the principal debtor shall remain unimpaired thereby."

The notice upon which the plaintiff in error relies is as follows:

"December 7, 1935.

To Ira V. Cowgill,
General Receiver of the Circuit Court of
Hampshire County:

Having paid my note to you on which J. S. Zimmerman is endorser, this is to notify you to collect his note on which I am endorser or to have him execute to you a new note without my endorsement.

John J. Cornwell."

It is objected that this notice fails to comply with the statute in these particulars: (1) it required the creditor "to collect" the note rather than to "institute suit thereon"; (2) it fails to require action "forthwith"; and (3) it is in the alternative.

In considering the sufficiency of this notice, the plaintiff in error insists that we should adopt a liberal construc-

tion of the statute on the theory that it is remedial; while the defendant in error, with equal vigor, insists that a strict construction of the statute is imperative for the reason that it is in derogation of the common law. We do not consider that it is necessary to classify our views on this statute as either liberal or strict, but we are constrained to approve of former pronouncements of this Court, and those of the court of Virginia before the creation of this State.

A "substantial" compliance with the statute has heretofore been required and held sufficient. We cannot overlook the fact that the statute itself does not require a strict compliance by the creditor with the terms of the prescribed notice. For example, section 1 of the statute provides that the surety, etc., "may * * * require the creditor * * * forthwith to institute suit * * *." But by section 2, it is provided that "if such creditor * * * shall not, within a reasonable time after such notice, institute suit", the surety shall be discharged. The notice requires the suit to be instituted "forthwith"; the compliance required is that the suit be instituted "within a reasonable time after such notice." Again the notice provided by section 1 merely requires that the creditor shall "institute suit", while by section 2, the creditor is required to go further and not only to "institute suit" but to "prosecute the same with due diligence to judgment and by execution." The very statute itself, therefore, does not contemplate literal adherence to the language of the notice. Why, then, should this Court be more exacting than the statute?

We find, further, that immediately after the enactment of this statute in Virginia, the court of that state, in *Wright's Adm'r.* v. *Stockton,* 5 Leigh 153, took the position that "The object of the statute being protection to the sureties, we must to that end, give it a liberal construction * * *." This declaration of the Virginia court was quoted with approval in *Gillilan* v. *Ludington,* 6 W. Va. 128, an approbation which was repeated directly by this Court, speaking through Judge Maxwell, in the case of *McDonald*

v. *Stewart,* 110 W. Va. 280, 158 S. E. 177. This statute undoubtedly was intended to be a practical working device by which the ordinary citizen could avail himself in a summary way of the relief theretofore offered to him by the expensive and circuitous procedure of a bill *quia timet.* We ought not to require of a surety the precise and technical exactness in such a notice which would be justified in a pleading or other like instrument. A notice clearly exhibiting an attempt to invoke the statute and substantially conforming to its requirements should be considered adequate.

But even from this approach, can the notice be considered sufficient? The word "collect" and the words "institute suit" are in no sense synonymous. The institution of a suit is an act which is always possible to the creditor, but it is not always possible for him to collect. An order to collect, therefore, is much more exacting than one merely to institute suit. Also, we must know that in the legal profession, claims are often placed in the hands of an attorney for collection without express or implied authority to sue, and that on the other hand, attorneys are repeatedly directed to reduce claims to judgment without any authority or obligations to press them to collection. Among the laity, a collector often, if not generally, does not have authority to incur the risk, cost and expense of litigation in his effort to collect. It is true that a suit is in many instances a means of collection, and it is also frequently a step making collection impossible by precipitating a crisis in the debtor's affairs. Can we say that the Receiver Cowgill was charged conclusively by this notice, with the knowledge that the surety here involved meant, without directly so saying, that he, the receiver, was required "forthwith to institute suit", rather than to undertake, in the exact language of the notice, "to collect", by negotiation, solicitation and other customary methods used for that purpose?

The conclusions reached by courts of other jurisdictions are not unanimous. We are cited to the following cases in which it has been held that a requirement by a

surety that the creditor "collect" is equivalent to a demand "to institute suit". *Iliff* v. *Weymouth,* 40 Ohio St. 101; *Baker* v. *Whittaker,* 177 Ky. 197, 197 S. W. 644; *Sullivan* v. *Dwyer* (Tex), 42 S. W. 355; *Franklin* v. *Franklin,* 71 Ind. 573; *Strickler* v. *Burkholder,* 47 Pa. 476; *Bishop* v. *Currie-McGraw Co.,* 133 Miss. 517, 97 So. 886. These cases are enlightening, but not very helpful. They seem to be largely influenced by the exact wording of the particular statute involved, by certain facts in the case, or by the attitude of the court as favoring either a liberal or strict construction of the statute. We are thus compelled to fall back upon our own judgment, aided by what we conceive to be the consistent attitude of this Court and of the early court of Virginia toward the statute in question, and the weight of judicial opinions in other jurisdictions.

The standard usually required in the form and substance of a written notice is thus stated in 46 C. J. at page 553: "Generally speaking, when a formal notice is required to be given, it should give the necessary information. It must be clear and explicit, and not ambiguous. The notice is not clear unless its meaning can be apprehended without explanation or argument. If the statute indicates the terms to be used in the notice, a substantial compliance therewith is essential." In an elaborate note in 30 A. L. R. at page 1287, the requirements in a notice under statutes for the relief of sureties are stated in the following language: "It is the general rule that the notice should be clear and explicit in its demand that suit be brought by the creditor to enforce the obligation." And more specifically in the same note on page 1292, is found the following statement: "A notice by the surety to the creditor, requesting or directing him to collect his claim against the principal, has, in general, been held to be insufficient, where it is not coupled with other language expressive of a demand that suit be brought." Each of these statements is supported by an abundance of cases, a discussion of which would be far beyond the possible limits of this opinion. Suffice it to say that our own investigation has

led us to the conclusion that the great weight of authority justifies the legal propositions therein stated.

Giving the plaintiff in error the full benefit of such latitude and liberality as we consider justified in the construction of the statute and of the notice in question, we are unable to bring our minds to the conclusion that a notice by a surety "to collect" is equivalent to a requirement "forthwith to institute suit." The other questions raised as to the form of the notice, therefore, become immaterial.

It necessarily follows that the instruction given on motion of the plaintiff in error, based upon the sufficiency of this notice, was improperly read to the jury.

The trial court filed in the case an elaborate and well annotated opinion, in which opinion he further discussed, but did not assign as a basis of his action, the question whether the general receiver of the Circuit Court of Hampshire County, since he could only act by direction of the court, could be required to institute suit upon notice by the surety. This is a nice question, but it is not considered or decided in this case.

It follows that the judgment of the Circuit Court of Hampshire County in setting aside the verdict in favor of the plaintiff in error and awarding the defendant in error a new trial must be affirmed.

*Affirmed.*

Fox, PRESIDENT, dissenting:

I am unable to agree with the conclusions of the majority in this case, and my dissent rests on two points:

*First:* I think the notice given by the defendant, Cornwell, to the General Receiver of the Circuit Court of Hampshire County, dated December 7, 1935, was a substantial compliance with the requirements of Code 45-1-1, and that, assuming the solvency of Zimmerman, the principal debtor, the failure of the receiver to proceed by suit, within a reasonable time thereafter, to collect the note in question, served to release Cornwell from liability thereon under the provisions of Code, 45-1-2. Action on

the note was not instituted until August, 1940, long after the reasonable time contemplated by the statute for the institution of such action had expired.

It will be noted that the statute provides that a surety "may * * * require" the holder of a note on which he is surety "forthwith to institute suit thereon", and that notwithstanding anything the surety may do, the holder of the note may still hold the surety to strict liability, if suit is instituted within a reasonable time after requirement to sue is communicated to the holder by written notice. No particular form of notice is required. In my opinion a notice to collect involves all necessary proceedings, including suit or action, to effectuate that purpose, and this is especially true where the notice served, as here, plainly shows on its face that the object and purpose of the surety was to bring about, either the collection of the note from the principal, or to be otherwise released from liability thereon. The object of the statute being to protect sureties, its provisions should be liberally construed in his favor. This works no injustice to the holder of the note, because if he proceeds to collect the note, and goes so far as to institute suit within a reasonable time, he retains his rights against the surety unimpaired, despite the notice to collect or to sue. Giving the statute a liberal construction, any written notice by a surety, which clearly advises the holder to collect should be interpreted as notice to sue, if that method of collection should be necessary. Reading Code, 45-1-1 and 2, together, I attach little importance to the word "forthwith" used in the first section, because the second section only requires a suit to be instituted within a reasonable time, and then only if the principal debtor is not insolvent. As I understand the majority opinion, the theory of a liberal construction of the statute is accepted, and likewise that only a substantial compliance therewith is required. In my opinion, such holding requires a further step, that is, a holding that the notice given was sufficient to place the receiver under the duty of proceeding under Code, 45-1-2, to collect the note in question by suit instituted within a rea-

sonable time thereafter, provided only the principal debtor was not at that time insolvent.

*Second:* I agree that, despite the notice given, the general receiver was under no duty to institute an action on the note in question, if the principal thereof was insolvent at the date of the notice, or within the reasonable time given for the institution of such action. *Remage* v. *Marple*, 76 W. Va. 379, 85 S. E. 663. I also agree that the evidence tending to show the solvency of Zimmerman at the date of the notice, December 7, 1935, and for a reasonable time thereafter, is meager and unsatisfactory, and, had the trial court directed a verdict against Cornwell on that ground, this Court would not be justified in reversing its action as plainly wrong. But the trial court did not pursue that course. It submitted the question of Zimmerman's solvency to the jury under an instruction, and the jury found in favor of Cornwell on that point. The question of whether a given person is solvent or insolvent at a particular time is a difficult one to determine. Generally speaking, a person is insolvent when his property is not of sufficient value to pay his debts, but that does not always mean that a judgment may not be collected from a person who is, in fact, insolvent. The statute must refer to a known insolvent. Zimmerman was in active business in December, 1935, and no suits had been instituted against him. He was apparently meeting his obligations, and it is not unreasonable to say that he could have met this one, had the general receiver proceeded so far as to institute suit, when Cornwell notified him to collect the note on which he was surety. Whether or not Zimmerman was solvent at that time in the sense that the note in question could have been collected, is a question upon which there might be disagreement among reasonable men. At least a proceeding to collect, if carried into judgment, would have established a lien on Zimmerman's real estate, and, if execution issued, his personalty as well. I do not think it can be said that the verdict of the jury was plainly wrong under the evidence. Furthermore, I think the verdict of the jury added some-

thing to the showing made by the evidence, and that the trial court did not have the same freedom with respect to weighing the evidence on the point of solvency that it had prior to the submission of that question to the jury. Having submitted the question, it was under some obligation to respect the jury finding. Neither the action of the court in refusing to direct a verdict on the question of insolvency, and submitting that question to the jury, nor the verdict of the jury, can be said to be plainly wrong. I am, therefore, of the opinion that the court erred in setting aside the jury verdict.

Believing that the notice of December 7, 1935, was sufficient, and that the verdict of the jury on the question submitted to it can not be held to be plainly wrong, I would reinstate the verdict and enter judgment here in favor of the defendant Cornwell.